UNITED STATES v. WONG DU BOW.

(District Court, D. Montana. November 23, 1904.)

No. 946.

1. CHINESE EXCLUSION—CLAIM OF CITIZENSHIP—EVIDENCE CONSIDERED.

Evidence offered in behalf of a Chinese person, arrested as being unlawfully in the ·United States, to establish his claim that he was born in this country, considered, and *held* insufficient to sustain the burden resting upon him on the issue, in view of a previous statement made and signed by him after his arrest that he was born in China.

On Appeal from Order of Deportation Made by a Commissioner.

Sanders & Sanders, for appellant.

Carl Rasch, U. S. Atty.

HUNT, District Judge. ·Wong Du Bow, a Chinaman, appealed from an order of deportation to China, made by a United States commissioner in this district. At his hearing before this court he interposed a plea to the jurisdiction upon the ground that he was born in the United States, and is therefore not subject to any law providing for the exclusion of Chinese. This plea was overruled because the fact to be determined was whether or not he is a native of the United States or China. The hearing proceeded. Several Chinamen testified that they knew defendant's parents in San Francisco, and the house where he said he was born, and that they had seen him from time to time since he was a child and up to the time of his departure for Montana, about 1896, and up to the present. Another Chinaman, a merchant living in Helena, testified that he was the uncle of the defendant, and that in the summer of 1896 he had sent $150 to a certain Chinese mercantile firm in San Francisco for the purpose of bringing the boy and his mother to Helena. On cross-examination it was proven that he had recently signed a bail bond for the appearance of another Chinaman, whose case is still pending before the court under a different name from that which he gave at this particular hearing. The difference in names was material in this respect. In testifying that he was the uncle of this defendant he gave his name as Wong Quong Chung, thus giving one of the defendant's names, while in the bond referred to he had signed his name as Quong Chung. When confronted with the bond and his signature, he first denied ever having signed the instrument at all, but later on admitted that he had. He also said that when he had remitted the money to bring the boy and his mother from San Francisco to Montana he bought a bank draft in Helena, and, while he could not remember the particular bank where he bought the draft, he said he had done business generally at two of the principal banks in the city, and named them. The District Attorney introduced as witnesses the cashiers of the institutions referred to by the witness and of another principal bank in Helena, each of whom testified that no draft was drawn in favor of the payee

¶ 1. Citizenship of the Chinese, see note to Gee Fook Sing v. United States, 1 C. C. A. 212; Lee Sing Far v. Same, 35 C. C. A. 332.

named by the witness during June, July, August, or September, 1896. The witness could produce no books showing any entry or item of this $150, and excused himself from doing so by saying that he took his account books back to China a few years ago, where they were lost or destroyed. Another Chinaman, who testified that he had known defendant in San Francisco, said that he had traveled with the mother and child from San Francisco to Helena by way of Portland, but he gave two days as the time consumed in the journey. An American, named Mackey, testified that he had attended a feast in Chinatown, San Francisco, about Christmas in the year 1885, the occasion being said to be the rejoicing at the birth of a child to one Mar Shee, a Chinese woman, said by the defendant to have been his mother, and who was said to have died at Helena several years ago. Witness saw no child at the feast. This witness said he had been a newspaper distributor in San Francisco, and had several times in the early 90's seen a little boy with Mar Shee, whom he knew; that he left San Francisco in 1896, and that several years afterwards—about 1902—when witness was a policeman in Helena, a boy spoke to him, recalled himself, and witness then recognized him as the same person whom he had seen some six or seven years before as a child in San Francisco, with Mar Shee. I was not favorably impressed with the manner of the witness. He was reluctant in his answers, and did not testify as if he felt at all satisfied that this defendant was the boy he had seen as a child. Nevertheless, I have carefully considered what he said, and, if I were able to give credence to the story of the defendant told in court, I should be disposed to hold that he had made out a sufficient case to entitle him to be discharged. But I cannot believe what the defendant here said. He testified that he was born on Dupont street, in San Francisco, in 1885, had never been to China, and that he had been to a Chinese school in San Francisco; that he was a cook by occupation; that his father had gone to Mexico about 1895, and that he had never heard from him since that time; that he came to Montana with his mother in 1896, and had lived here since. But when he was apprehended by the inspector at Ft. Assinniboine he made a statement over his signature to the effect that he was born in China in 1885, and that he had come to the United States in the year 1898, having landed at Portland, Or.; that it cost him $400 in Mexican money to get in; and that his friends arranged the matter of his landing. He also said at that time that his father lived in China, and never had been in the United States. This statement, taken by the inspectors, and put into writing, was in English, and made through a Chinese interpreter, Moy, who is regularly employed by the government to aid the inspectors. It was read over to defendant before he signed it. The defendant now denies having made the statements therein contained. There is evidence that defendant did not come to the office at Ft. Assinniboine where the inspectors were, although ordered to do so by the military authorities, but that he tried to flee from them, and was overtaken back of the buildings at the fort. His explanation of this incident was that he was cooking for an officer, and was merely going to a vegetable garden at the fort, and had no intention of trying to get away. An effort was made to prove that the interpreter misunderstood the

questions and answers when the statement was taken before the inspector. But the interpreter seems to be very careful, and, so far as one who is unfamiliar with the language can judge, his services upon this and other hearings before me have been faithfully and accurately rendered. If they had not been, the interpreter who was called by the defendant, and who sat by the government interpreter throughout the hearing, would have exposed any mistakes or willful misinterpretations.

It is also argued that when the defendant was arrested he was intimidated and frightened, and that his statement before the interpreter ought not to be given any weight. In support of this contention defendant, several days after the close of the testimony, and just before the argument, asked and was granted leave to take the witness stand again. He said that when he was arrested in April last at Ft. Assinniboine, near the garden referred to, the inspector who took him pointed a pistol at him, although he (defendant) was doing nothing, and had nothing in his hands but some spinach. Defendant did not testify to this when he was first on the stand, and it is before the court that the inspector, Boyd, who is said to have pointed the pistol, is now in St. Louis. The evidence of Mr. Ebey, the particular inspector who took defendant's statement, is to the effect that defendant did not appear to be under any fear, and was not threatened, or influenced by any means whatsoever to say anything or to make any statement unfavorable to himself, or not in strict accord with the truth.

The learned senior counsel for defendant has addressed a considerable part of his interesting argument to the general features of the exclusion laws, and urges that they are not applicable to one born in the United States, though of Chinese parents. But the evidence of defendant in this case fails to prove what the law requires him to establish—that he is a native of the United States—for, considering his two statements, with all the facts and circumstances, I am compelled to believe he was truthful in the first and false in the second; hence that he is unlawfully within the United States, and must be deported.

So ordered.